

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-26-2009

# USA v. Donzo

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4471

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Donzo" (2009). *2009 Decisions.* Paper 1320.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1320

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>**NOT PRECEDENTIAL**</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-4471
_____

UNITED STATES OF AMERICA

v.

MUSA DONZO,
                              Appellant

___
ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Criminal No. 07-cr-00134)
District Judge:  The Honorable R. Barclay Surrick.

_____

Submitted Under Third Circuit LAR 34.1(a)
January 16, 2009

BEFORE: SLOVITER, BARRY, and SILER,[*] <u>Circuit</u> <u>Judges</u>.

(Filed: May 26, 2009)

_____

OPINION OF THE COURT
_____

_____

  *The Honorable Eugene E. Siler, Jr., Senior Circuit Judge for the United States
Court of Appeals for the Sixth Circuit, sitting by designation.

SILER, Circuit Judge.

After a trial by jury, Musa Donzo was convicted of attempted carjacking and knowingly carrying a firearm in relation to a violent crime in violation of 18 U.S.C. §§ 2119 and 924(c). He appeals his conviction on the basis of improperly admitted evidence, insufficient evidence, improper jury instructions, and denial of due process. He appeals his sentence for lack of reasonableness and improper calculation of his criminal history under the Sentencing Guidelines.

## I.

In September 2006, Ms. Janel Samuels exited her vehicle near her apartment complex in Bensalem, Pennsylvania and was robbed by two men. One of the two men pulled out a firearm, pressed it to Samuels's head, and told her to give him her money, while one of the men took Samuels's purse. The two men then ran toward her car and attempted to start it, but failed because of a security device in the vehicle.

Detective Mark Kelly arrived at the scene, obtained a description of the men, and took fingerprints from Samuels's vehicle. He placed Donzo's photo in an eight-person photo lineup and showed the lineup to Samuels. Samuels selected Donzo's photograph and stated she was "absolutely positive" Donzo was the person who had pointed a gun at her and attempted to steal her car.

2

In an interview the following month, Donzo admitted to being in the area of the carjacking incident, touching the victim's vehicle, and even being involved in the carjacking in some respects with another male, Joseph Jarlee, but did not admit to being the gunman.

Donzo and Jarlee were later indicted on one count of attempted carjacking in violation of 18 U.S.C. § 2119 and one count of knowingly carrying a firearm in relation to a violent crime in violation of 18 U.S.C. § 924(c).

Jarlee eventually pleaded guilty to his involvement in the carjacking. At Donzo's trial, both Samuels and Jarlee testified. Jarlee's testimony corroborated Samuels's account that Donzo got out of his car, walked toward Samuels, put a gun in her face, and took her keys and purse. Further, Jarlee indicated that he and Donzo followed Samuels's car with the intent to steal it. Donzo was found guilty on both charges.

At trial, the government moved to exclude evidence concerning an unrelated carjacking that occurred on October 2, 2006, in Yeadon, Pennsylvania. There, a witness identified Donzo as a suspect, but Donzo was in custody at the time of the carjacking. The district court granted the motion on the basis that the misidentification was irrelevant.

At sentencing, the presentence investigation report contained a list of aliases and a statement of victim impact. Donzo objected to this information as inadmissible hearsay. The sentencing court allowed the information to be admitted and Donzo was sentenced to consecutive sentences of 63 months and 84 months, respectively.

**II.**

3

On appeal, Donzo argues that the district court abused its discretion by excluding evidence concerning the prior misidentification of him in the separate carjacking in Yeadon. We disagree. "We review the district court's decision to exclude evidence based on lack of relevance for abuse of discretion." *Caver v. City of Trenton*, 420 F.3d 243, 265 (3d Cir. 2005).

Donzo cites *United States v. Stevens*, 935 F.2d 1380 (3d Cir. 1991), as support for his argument that the prior misidentification should have been admitted into evidence. Under the "reverse 404(b)" theory that Donzo advances, a defendant may use similar "other crimes" evidence as a defense to a crime if it tends to negate his guilt of the crime charged against him, so long as the probative value of the evidence under Rule 401 is not substantially outweighed by Rule 403 considerations. *Stevens*, 935 F.2d at 1404-05; Fed. R. Evid. 404(b).

In *Stevens*, two very similar crimes were committed on a military base within three days and a few hundred feet of each other, both involving the armed robbery of military personnel. *Stevens*, 935 F.2d at 1401. The two robberies in *Stevens* were so similar that the Army Criminal Investigation Division believed that the same person had committed both crimes. *Id.* The victim in the second robbery stated that Stevens was not his assailant, and this court held that the district court's exclusion of this affirmative non-identification was error. *Id.* at 1406.

Here, Donzo failed to meet the threshold of Rule 401 and 403. He sought to introduce evidence that a victim of a carjacking approximately twenty miles away from the instant

offense had mistakenly selected Donzo from a photo array for a crime committed while Donzo was in the custody of authorities. Donzo established little evidence of similarity in the two crimes, other than both crimes involving a carjacking. Further, Donzo did not seek to introduce the evidence to prove someone else may have committed the instant offense, but sought to use it as proof that misidentifications can occur.

The fact that Donzo was misidentified for a moderately comparable crime has no bearing on whether he committed the instant offense in which his identification was corroborated by substantial evidence. Therefore, the district court did not abuse its discretion in excluding the evidence.

Donzo next argues that the evidence was insufficient to support his conviction on both counts. First, under 18 U.S.C. § 2119, carjacking is committed when someone (1) with the intent to cause death or serious bodily harm; (2) takes a motor vehicle; (3) that has been transported, shipped, or received in interstate or foreign commerce; (4) from the person or presence of another; (5) by force and violence or by intimidation; or attempts to do so. Second, 18 U.S.C. § 924(c) imposes an additional sentence term of at least five years to anyone who uses or carries a firearm in the commission of a crime of violence.

The evidence supports convictions on both counts. Donzo pointed a gun at or against Samuels's head, then took her keys, and attempted to start her vehicle. Jarlee testified that Donzo instructed him to follow Samuels's vehicle from a local restaurant in order to "get it and get some money." To address Donzo's argument, the intent to cause serious bodily harm

5

was met when Donzo pressed a firearm against the victim's head. Taking the victim's keys from her satisfies the element of taking from the victim's person or in her presence.

With respect to the § 924(c) charge, the testimony was sufficient to establish that Donzo possessed a firearm when he committed the crime. Therefore, Donzo's claims that the evidence did not support the convictions must fail.

Donzo also argues that the district court's failure to give the jury his requested instruction that "a 'mere bluff' does not rise to the level of intent to cause death or serious bodily harm," was reversible error. A district court's refusal to instruct the jury on a defense theory is reviewed de novo where the defendant objected to the court's refusal to give the charge. *United States v. Stewart*, 185 F.3d 112, 124 (3d Cir. 1999).

In viewing the jury charge as a whole, we do not agree with Donzo that the district court erred in failing to give the instruction he requested. The district court gave the following instruction instead of Donzo's requested instruction: "You should understand, ladies and gentlemen, that evidence that the defendant intended to frighten the vehicle (sic) is not sufficient to prove intent to harm or kill." The charge the district court gave was consistent with Donzo's requested charge, but uses the language "intended to frighten" instead of "mere bluff." Therefore, when viewing the jury charge as a whole, failure to use Donzo's requested charge with the words "mere bluff" was not error. *See United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995).

6

Donzo further argues that his due process rights were violated when the district court denied his motions to suppress Samuels's photo array identification of him and his statements to police before his arrest. We review "the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise[] plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

To violate due process, an identification procedure must be both (1) unnecessarily suggestive and (2) create a risk of misidentification. *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006). Donzo offers little evidence that the photo array was unnecessarily suggestive. He argues that the photo array by the detective was suggestive because the computer database did not allow the characteristic "full lips" into the database, which he argues is the main characteristic Samuels used to identify him. Donzo's argument fails because he has presented no evidence that Samuels informed Detective Kelly that her assailant had full lips before the photo array was made, nor has Donzo shown that the other men in the array lacked full lips. Donzo acknowledges that the detective entered characteristics such as age, height, race, and hair length into the computer database for comparison. The evidence Donzo offers is not sufficient to prove the identification process was impermissibly suggestive.

In regard to Donzo's statements to police, his argument that introduction of those statements at trial violated his due process rights because he did not knowingly waive his

7

Miranda rights due to his lack of capacity to understand English must also fail. The fifteen minute pre-Miranda conversation Donzo had with the authorities in October 2006 was to determine whether Donzo could speak and understand English. Special Agent Vincent of the F.B.I. testified that Donzo could speak and understand English. Donzo orally agreed to waive his rights and also signed a written waiver. Further, Donzo attended and graduated from a Philadelphia high school that taught its courses in English; he was enrolled in a college that taught its courses in English; and he had been a resident of the United States since 2003. Therefore, the totality of the circumstances show that Donzo knew the rights he was waiving when he signed the waiver and spoke with authorities in October 2006.

Donzo argues that a list of his aliases and victim impact statements contained in his presentence investigation report were hearsay and improperly admitted at his sentencing hearing. Donzo does not disagree with the premise that the Confrontation Clause does not apply in the sentencing context or prevent the introduction of hearsay at a sentencing hearing. *See United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007) (*citing Williams v. Oklahoma*, 358 U.S. 576, 584 (1959)). Donzo does, however, challenge whether the hearsay had a sufficient indicia of reliability. *See United States v. Brothers*, 75 F.3d 845, 848 (3d Cir. 1996). The victim impact statement, which was based on statements of an eyewitness, and the list of aliases, which came from the National Crime Information Database, were sufficiently reliable and, therefore, Donzo's argument fails.

Donzo's appeal also addresses the reasonableness of his sentence. He argues that the district court erred denying his motion for downward departure from criminal history category II to category I, and that this denial rendered his sentence unreasonable. Specifically, he argues that his convictions for possession of marijuana and shoplifting should not have been included in his criminal history points for sentencing.

This court reviews challenges to the district court's sentencing determinations for reasonableness. *Gall v. United States*, 128 S.Ct. 586, 594 (2007). Under USSG § 4A1.2(c), some misdemeanor and petty offense are excluded under the criminal history point calculation. However, neither shoplifting nor possession of marijuana is listed as one of the enumerated offenses. Therefore, the district court's decision to include the shoplifting and possession of marijuana offenses into Donzo's criminal history category was proper.

Lastly, Donzo argues that the district court erred in refusing his request for a downward departure from the Guidelines based on 18 U.S.C. § 3553(a) factors. However, a district court's discretionary decision not to depart downward is a decision we lack jurisdiction to review. *United States v. Vargas*, 477 F.3d 94, 104 (3d Cir. 2007).

**IV.**

For the foregoing reasons, we will affirm the district court's judgment.

9